**IN THE UNITED STATE DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) CHARLES EKENE OGU, individually, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| (2) PATHFINDER, a Schlumberger subsidiary company, and (3) SCHLUMBERGER, an international corporation, | ) ) ) ) ) | CIV-16-296-D |
| Defendants. | ) ) | JURY TRIAL DEMANDED ATTORNEY LIEN CLAIMED |

## COMPLAINT

Plaintiff, Charles Ekene Ogu, by and through his undersigned counsels, the Borghei Law Offices P.L. L.C. and M. Mark Myles P.C., hereby complains against the Defendants, Pathfinder, a Schlumberger subsidiary company and Schlumberger, an international corporation as follows:

STATEMENT OF CLAIM

1. This is an action to vindicate violations of the Plaintiff's civil rights and to redress the unlawful and discriminatory conduct and employment practices of the Defendants. This action arises out of the illegal and wrongful discharge of Mr. Charles E. Ogu on or about November 17, 2014. Mr. Ogu alleges, inter alia, that he

was actually and constructively terminated from his employment based, in whole or in part, upon his race and/or nationality in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section(s) 2000e et seq., and the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. Section 1981.

## PARTIES

2. Plaintiff, Charles Ekene Ogu, an African, is an adult male individual and citizen of Nigeria who currently resides at 9 Unachukwu Street, Rumuibekwe, PHC, Rivers, Nigeria. At all relevant times, Mr. Ogu was an employee of the Pathfinder, a Schlumberger subsidiary company and Schlumberger, an international corporation, within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e, et seq., and applicable case law.

3. Defendant, the Pathfinder Company [herein referred to as Pathfinder], is a Schlumberger corporation or similar business entity existing under the laws of the State of Texas and Oklahoma, and which regularly conducts business in Oklahoma City, Oklahoma.

4. Defendant, Schlumberger, is an international corporation incorporated in Willemstad, Curaçao as Schlumberger N.V. with its North America headquarters located at Sugarland, Texas, and conducts business in almost the entire United States including Oklahoma.

5. At all relevant times, Defendants Pathfinder and Schlumberger employed in excess

2

of fifteen employees and was an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e, et seq.

## JURISDICTION AND VENUE

6. This is, in part, an action authorized and instituted pursuant to: Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section(s) 2000e et seq.; the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. Section 1981; 42 U.S.C. Section 1981A; 42 U.S.C. Section 1988, and the common law of the State of Oklahoma.

7. The jurisdiction of this Court is predicated upon 28 U.S.C. Section 1331 and 1343, to redress the unlawful deprivation of Plaintiff's rights secured, guaranteed and protected by federal law. This Court may also exercise pendant jurisdiction over Plaintiff's state law claims arising under the common law and statutes of the State of Oklahoma, and which arise from a common nucleus of operative fact pursuant to 28 U.S.C. Section 1367.

8. Venue is proper in the United States District Court for the Western District of Oklahoma pursuant to 28 U.S.C. Section 1391(b), wherein Plaintiff resides, all Defendants regularly conduct business, and where all the wrongful conduct occurred.

## ADMINISTRATIVE PREREQUISITES

9. Mr. Ogu has complied with all the administrative prerequisites to action under

Section 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e-5 as follows:

a. On or about December 30, 2014, Mr. Ogu timely filed a formal charge of discrimination with the Equal Employment Opportunity Commission (hereinafter referred to as E.E.O.C.);

b. Mr. Ogu promptly and diligently accommodated all E.E.O.C. requests for information and fully cooperated in the agency's investigation of this matter;

c. Since Mr. Ogu had to leave the United States due to visa expiration, Mr. Ogu provided the name of the undersigning counsel to be contacted in his absence.

d. Mr. Ogu has exhausted all available administrative remedies in accord with the aforementioned statutes prior to instituting this Civil Action, and Counsel for Mr. Ogu formally received a Notice of Right to Sue from the E.E.O.C. on December 30, 2015. No administrative prerequisites are required before a Plaintiff files a complaint pursuant to the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. Section 1981.

## FACTUAL ALLEGATIONS

10. Plaintiff, Charles E. Ogu, was employed by Defendants, Pathfinder and Schlumberger Coors on or about February 4, 2007.

11. At all relevant times, Defendants, Pathfinder and Schlumberger, employed in excess

4

of fifteen (15) employees for at least twenty (20) calendar weeks in 2007 to 2014, and was further engaged in an industry directly affecting interstate commerce.

12. At all relevant times, all matters regarding compensation, terms, conditions, rights and privileges of Mr. Ogu's employment were governed and controlled by Defendants, Pathfinder and Schlumberger.

13. Upon information and belief and at all relevant times, Defendants were acting through their agents, servants and/or employees. Defendants Pathfinder and Schlumberger therefore are liable for the acts and omissions of those individual agents, servants and or employees pursuant to the principals of ratification, *respondeat superior* and actual and/or implied agency.

14. At all relevant times, Mr. Ogu fully, adequately and completely performed all of the functions, duties and responsibilities of his employment with Defendant Pathfinder and Schlumberger.

15. Mr. Ogu has a history and record of employment and regular salary.

16. Beginning on or about February 4, 2007, Charles E. Ogu, an African (Nigerian) male, was employed at the Schlumberger as an international mobile drilling engineer. Mr. Ogu worked at Drilling Engineering Center, Abu Dhabi and Yemen before he was transferred to the United States in 2011.

17. On arrival to Oklahoma City on January 17, 2011, Mr. Ogu resumed work as a Field Directional Drilling Engineer.

18. In the early onset of her second pregnancy, Mr. Ogu's spouse began experiencing severe physical and psychological issues during her pregnancy. She had abdominal

5

pain and strange behavior including suicidal thoughts. Mr. Ogu was working on rig sites most of the time and was unable to attend to his family. Mr. Ogu pleaded with the then Directional Drilling Coordinator (DDC), Mr. Duane Herring, to modify his schedule to give him equal time at the rig site so that he could monitor the developments of his spouse's health and his children's well-being. Mr. Ogu's schedule was not modified.

19. On or about December 2011, Herring was replaced by Randy Koukal as the new DDC. Mr. Ogu once again pleaded to the new Coordinator about his situation and asked to be transferred out of the field as soon as his current project was completed. Koukal consented to the request, however took no further action to facilitate the requested action. During this time Mr. Ogu was working on the rig site for four (4) week periods and it was extremely difficult for him knowing that his wife and children were in danger.

20. On or about August 8th, 2012, Mr. Ogu's spouse had the new baby. Once again Mr. Ogu renewed his pleas with the DDC, Koukal. Koukal suggested to Mr. Ogu that Ogu wait until after the GFE grade II promotion because it would give the company time to open a new position and create more opportunities for an office-based job. On September 23rd, 2012, Mr. Ogu completed all the promotion requirements; projects, presentations and interviews with top management staff in Houston; however Mr. Ogu did not receive a promotion, a modification of his rig site schedule, nor an office based position.

21. According to the "Equip program" which specifies Schlumberger promotion steps

and requirements, Mr. Ogu had become a Grade 11 GFE DDS (General Field Engineer Directional Drilling Supervisor). GFE is the last fixed step promotion that Mr. Ogu needed to actualize before assuming the position of DDS.

22. HR representative, Linda White, refused to give Mr. Ogu a promotion letter but Operations Manager, Mr. Ariel Torre, gave a copy of Mr. Ogu's promotion letter to Mr. Ogu. HR did not take any step regarding the new position for Mr. Ogu.

23. In December of 2012, Mr. Ogu missed his vacations due to a work related trip to Midland, TX. Upon Mr. Ogu's return, his children were sick and required medical attention. Despite knowledge of Mr. Ogu's family issues, the DDC, Koukal asked Mr. Ogu to stay for extra days at the rig site until December 29, 2012. Mr. Ogu complied and consequently missed his much needed annual leave. It took eleven (11) months and a series of emails, meetings, and phone calls to get Mr. Ogu's vacation allowance paid. At the end, it took a Vice President's signature to approve Mr. Ogu's vacation allowance, and Linda White of HR placed all of the blame on Mr. Ogu.

24. On or about January 31, 2013, a family friend called Mr. Ogu who was working at the rig site that his six month old daughter and three year old son were in the family friend's house with them. Upon inquiry Mr. Ogu was told that his spouse had attempted suicide and that she was at the hospital. Mr. Ogu hurried back only to discover a very terrifying circumstance: his wife had locked herself and their kids in the house for over one (1) week without food. Fortunately Mr. Ogu's friend had visited and stopped Mr. Ogu's confused wife who was trying to stab herself while

shouting that "Obama and CIA were spying on her and some people were telling her to kill herself."

25. From January 31, 2012 until February 3, 2013, Mr. Ogu's spouse and kids stayed all the time with friends, while Mr. Ogu had to go back to his job. On February 3, 2013, at about midnight, Mr. Ogu's wife attempted suicide for the second time and this time she injured herself on the right leg with a knife. 911 was called again and she was taken to the Midwest Regional hospital and remained there for one (1) week. Mr. Ogu's spouse was diagnosed as having "Post-Partum Depression and Trauma."

26. Subsequently, Mr. Ogu called the matter to the attention of the following management and they had a meeting on Mr. Ogu's career progression:

   a.  Lee Allen – OKC Operations Manager (past)

   b.  Randy Koukal - OKC Directional Drilling Coordinator (Past)

   c.  Linda White – OKC HR Rep

   d.  Lee Butler – Pathfinder Personnel Manager (Past)

In their meeting Mr. Ogu made it clear that he would prefer a Drilling Engineer position for this was the closest to his position as a Directional Drilling Engineer despite being fully qualified as GFE DDS. Further, Mr. Ogu had done the same job in the past, and it was an available position in Oklahoma City, Oklahoma. All of the above-named persons agreed that Mr. Ogu should  be getting off the rig, that Mr. Ogu should enroll in some courses to help his transition into DE (Drilling Engineering position) despite being overqualified for the DE position and already

having the qualifications, and that he should contact Jonathan Mattick, the then Drilling Engineering Manager, in this regard.

27. Following that meeting, Mr. Ogu did enroll for the recommended courses; however none was ever approved. Mattick never replied to Mr. Ogu's requests nor provided any advice on how Mr. Ogu should proceed.

28. Mr. Ogu then tried to contact another Drilling Engineer, Juan Carlos, but Carlos had no knowledge of such an arrangement. Mr. Ogu personally visited the Oklahoma City office to meet with DE's but it was not fruitful either. After a few more visits, and no instruction received from either Mattick or Koukal, it became clear that Mr. Ogu was not going to be assigned to a position in Oklahoma City. During this period at least the following people with the specified qualifications were transferred out of the field:

   a. Scott Coffey (Caucasian) – GFE promotion after Mr. Ogu with only six months DD experience)

   b. Ryan Hempton (Caucasian) – (GFE promotion before Mr. Ogu with only one year as DD experience)

   c. Travis Ruth (Caucasian) – (No GFE promotion)

   d. Irvin Morzano (Hispanic) – (No GFE Promotion) – This person was close to Mr. Koukal's 2nd boss who was also Hispanic.

   e. Alfonso Laguna (Hispanic) – (No GFE promotion) - This person was close to Mr. Koukal's 2nd boss who was also Hispanic.

   Mr. Ogu had personally trained some of the above-mentioned personnel.

29. By mid-2013, after months of no action by the HR or the DDC, Mr. Ogu began to search for a position elsewhere. In September 2013, Mr. Ogu had an opportunity to start working with another company from January 2014, which had offered him a much higher day rate and better working conditions.

30. Coincidentally, it was Mr. Ogu's time to renew his bi-annual NAL (North America Land) Directional Drilling Retention Program "Drilling Performance Bonus Plan". Mr. Ogu requested to cash out his $22,000.00 accrued in the plan. Upon receipt of his request, Linda White from HR invited Mr. Ogu for a talk, but he was on the rig site then.

31. At the same time, Mr. Ogu gave hints to Randy Koukal of his plans. Consequently, Mr. Koukal promised to increase Mr. Ogu's day rate from $760/day to $850/day and also promised to take actions on his transfer. Mr. Koukal informed Mr. Ogu that that management was planning to hire 50 more Drilling Engineers across the NAL (North America Land), and that he will be able to get the DE job, which ordinarily, should not even be a problem as it is a step down and most DDs would not even consider such demotion. Mr. Ogu was agreeable since his family desperately needed him.

32. As a result, Mr. Ogu cancelled his cash out option on the "Drilling Performance Bonus Plan, and also changed his mind and decided to continue working in Schlumberger (Pathfinder). One condition of the retention program is that once the window to make your selections passes, it is locked in for another two (2) years. If one decides to quit from the company before the two (2) years elapse, he or she

forfeits all savings accrued on the plan. However, if the company terminates the employment without cause, it will pay the balance prorated to the date of termination or last day of work. At the time of his termination, Mr. Ogu had accrued about $45,000 in the plan and the defendant companies chose not to pay him despite his termination.

33. Excerpts of email conversations with Linda White (HR Rep.), Juan Carlos (Drilling Engineer Team Lead) and Lyndel Cissell (Drilling Engineering Manager) show how Linda White of HR had stressed about Mr. Ogu's demographic status and renewal of his L1 Visa.

34. As of November 2013, the day pay rate of Mr. Ogu was reduced to $550.00 per day without prior notification to which Mr. Ogu protested.

35. During this period Mr. Ogu overhead someone referring to Cissell's comments (then USL Drilling Engineering Manager) saying that "she cannot afford to get Mr. Ogu on board in Drilling Engineering because he is not a US citizen." and "That Ogu won't be around for long".

36. Upon inquiry, in January 2014, Mr. Ogu was summoned to the office for a meeting. There Mr. Ogu was introduced to two gentlemen, one of whom introduced himself as a lawyer and asked Mr. Ogu if he would like to get a lawyer. Then they told Mr. Ogu that they were doing an audit on timesheets and that they wanted to clarify Mr. Ogu's grades and day rate. Those gentlemen put forward Mr. Ogu's rig site's time sheets, and asked questions. Then the second man, whose name was Jimmy (James) Alan, introduced himself as the new Field Training Coach (FTC) and asked

11

Mr. Ogu whether he had lead jobs, to which the response was positive. Mr. Alan then said, "Well, from now on, you should note that you are GFE DD and your day rate will be $550/day." Mr. Alan further explained that "there are no more positions like GFE DDS besides the fact that Mr. Ogu never was a GFE DDS". Mr. Alan failed to give an explanation about how after fulfillment of all the requirements in both years of experience and project wise, Mr. Ogu was never a GFE DDS. Mr. Alan failed to give any reasonable explanations as to why Mr. Ogu's day rate was negatively affected. Mr. Ogu was instructed to direct any concerns to his manager, Chris Brockman. At the end, the lawyer advised Mr. Ogu to treat the meeting as confidential, and that it was an order.

37. For one year up until November 16, 2014, Mr. Ogu was being paid $550/day and his manager, Chris Brockman, kept saying that "It's management's call."

38. On or about April 4, 2014, as Mr. Ogu was preparing to leave for Corpus Christi for his job assignment, his spouse attempted to cut her hands with a knife. The primary physician advised Mr. Ogu to take his wife to hospital. While at Norman Regional Healthplex, Mr. Ogu was receiving calls from the DDC at Corpus Christi to the point that nurses spoke to Mr. Ogu's DDC and manager, Chris Brockman, on the phone and explained the circumstances, and that asking Mr. Ogu to leave his sick wife in the hospital was medically wrong. Hospital advised Mr. Ogu to apply for FMLA for some days in order to protect his job; however before finding an opportunity to do so, Chris Brockman, Mr. Ogu's manager sent a warning letter to Mr. Ogu and filed a report against him.

39. Another similar incident happened in July of 2014. During which Mr. Ogu missed a phone call from the rig site, not because he was with his wife but only due to his phone's malfunction.

40. After this incident, once again Mr. Ogu asked his the DDC (Chris Brockman), HR Rep (Linda White) and the management to transfer him off the field. Yet Defendants blatantly refused to take action.

41. From all communications between Mr. Ogu and his employer, it can be inferred that Mr. Ogu was exceedingly competent and Defendants never incurred any losses as a result of Mr. Ogu's performance. Most of those communications show that Mr. Ogu's reasonable pleas had always been ignored, and that Ogu never got what he was entitled to.

42. On or about November 16, 2014, Mr. Ogu had yet another family emergency that required his prompt and immediate attention, and again the Defendants ignored his situation. As a result, Mr. Ogu submitted a letter of intention to resign effective December 1, 2014.

43. According to company policy, Mr. Ogu had 14 days to revoke his intent letter. As such, Mr. Ogu revoked his intent a few days later; however he was notified that his resignation was accepted on November 17, 2014. Mr. Ogu's leave days were cancelled and leave allowances were withheld even though he had worked for most of the year.

CAUSES OF ACTION

FIRST CAUSE OF ACTION

Defendants' Violation of Title VII's Prohibition Against Employment Discrimination

Racial Discrimination -- Disparate Impact

44. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein.

45. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, and 42 U.S.C. Section 1981, for relief based upon the unlawful employment practices of the above-named Defendants. Specifically, Mr. Ogu complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race.

46. Mr. Ogu is an African (black) male and during his employment with Defendants was a member of a class protected under Title VII against race based discrimination by his employers, Defendant Pathfinder and Schlumberger, or its supervisory personnel.

47. At all relevant times, Plaintiff fully, adequately and completely performed all of the functions, duties and responsibilities of his employment with Defendants, Pathfinder and Schlumberger.

48. At all relevant times, Defendants operates a HR system through which disgruntled, disciplined and/or discharged employees may challenge an adverse employment

14

decision. However, it is not known whether an appeal board is available and if so, how and through which selection method said appeal board is appointed.

49. It is also not clear if there is such an appeal system in place, why Mr. Ogu, Plaintiff herein, was never instructed of his rights to appeal the adverse employment decision.

50. On information and belief, Defendants did not investigate the possibility of an alternative decision after Mr. Ogu informed them of revocation of his prior intent to resign.

51. On information and belief, Defendants did not investigate the possibility of an alternative decision regarding Mr. Ogu's leave for 2014 and his leave allowances.

52. On information and belief, the Defendants' promotional procedures negatively impacts minority employees in general and African-American or African employees in particular on a company-wide basis in that a lower percentage of minority employers are promoted as compared to caucasian employees.

53. Defendants' employment process also negatively impacts minority employees in general, and African-American or African employees in particular, at a substantially higher rate than white employees and therefore has a significant discriminatory impact on minority employees.

54. As a result of Defendants' policies and practices, Mr. Ogu was unjustly and discriminatorily deprived of equal employment opportunities because of his race.

55. As a further result of Defendants' above stated actions, Mr. Ogu has been, is being and will be deprived of income in the form of wages and prospective retirement

15

benefits, and other benefits, promotion opportunities and job assignments due to him as an employee, but denied because of his race and in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

Defendants' Violation of Title VII's Prohibition Against Employment Discrimination
National Origin Discrimination

56. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein.

57. Defendants have unlawfully discriminated against Plaintiff Ogu based on his national origin (African/ non-US Citizen) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-16 *et seq.* as amended.

58. Plaintiff is a member of a protected group based on his national origin (African/Nigerian).

59. Defendants treated Plaintiff less favorably than similarly situated employees who are not African.

60. Defendants have discriminated against Plaintiff in the terms and conditions of his employment and employment opportunities on the basis of his protected status, in violation of Title VII.

61. Defendants have a pattern and practice using the Immigration and Visa laws and procedures to deny non US citizen employees promotions and other employment

opportunities on the basis of their national origin, in violation of Title VII.

62. Plaintiff has and is suffering irreparable injury and monetary damages as a result of Defendants' discriminatory practices unless and until the Court grant relief.

## THIRD CAUSE OF ACTION

Intentional Infliction of Emotional Distress

63. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein.

64. As set forth herein, during his employment with Defendants, Mr. Ogu was subjected to a pattern of discrimination and misconduct in the workplace based, in whole or in part, on his national origin, and/or race.

65. At all relevant times, the above-named Defendants knew or should have known that Plaintiff's qualifications were superior to other employees holding the same job. Despite said knowledge, Defendants ignored the evidence and did not offer requisite promotion to the Plaintiff, and if questioned Defendants attempted to coerce and intimidate him.

66. At all relevant times, the above-named Defendants knew or should have known that Plaintiff was having family issues that were at times extremely critical and could cause harm to life and limb. Despite said knowledge Defendants ignored the evidence and continued harassment and showed an utter disregard for Plaintiff's concerns about his family by keeping him at a distance from his home in Oklahoma

17

City.

67. Despite actual and/or constructive knowledge that Plaintiff's wife and children were in danger and needed his help, Mr. Ogu was written-up, and eventually was terminated from his employment.

68. The above-named Defendants, by forcing Mr. Ogu to stay away from his family and terminating his employment, acted intentionally, recklessly and/or with deliberate indifference to a substantial probability that severe emotional distress would result to Mr. Ogu.

69. The above-named Defendants' actions towards Plaintiff as set forth above, are evidence of a pattern of race discrimination and/or national origin discrimination which further constitutes extreme and outrageous conduct.

70. The conduct of the above-named Defendants was outrageous in character and extreme in degree, because said conduct was atrocious and egregious, and went beyond all possible bounds of decency and is utterly intolerable in a civilized community.

71. The extreme and outrageous conduct of the above-named Defendants toward Mr. Ogu was done in a willful and wanton manner, and constituted a disregard for the rights and well-being of Mr. Ogu.

72. As a direct and proximate result of the above-named Defendants' extreme and outrageous conduct, Mr. Ogu suffered severe emotional distress.

73. Because the Defendants' extreme and outrageous conduct toward Plaintiff was improperly motivated, and was intentional, willful and wanton, Mr. Ogu is entitled

18

to punitive/exemplary damages in addition to compensatory damages.

## ADDITIONAL PARTIES AND/OR CLAIMS

74. Mr. Ogu respectfully requests leave to amend his Complaint to add additional parties and/or claims upon completing initial discovery. It may be necessary to name agents or employees of the above-named Defendants, and to add additional claims such as intentional discrimination based on race pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e et seq., and 42 U.S.C. Section 1981; conspiracy, malicious prosecution and negligent hiring if additional investigation and discovery elicits information that supports such claims.

## DAMAGES

75. The conduct of the above-named Defendants, as set forth herein, in violating Mr. Ogu's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section(s) 2000e et seq.; the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. Section 1981; and the common law of Oklahoma, caused injuries, damages and harm to Mr. Ogu, including, but not limited to, past and future economic loss, past and future non-economic losses, including extreme emotional distress, pain and suffering, inconvenience, mental anguish, impairment in the quality of life; and consequential losses.

WHEREFORE, Plaintiff Charles Ogu requests judgment and damages against Defendants, the Pathfinder and Schlumberger as follows:

A. A declaratory judgment that Defendants have violated Mr. Ogu's right to be free from discrimination in the workplace pursuant to the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e, et seq.; the Civil Rights Act of 1866, as amended by the Civil Rights Restoration Act of 1991, 42 U.S.C. Section 1981; 42 U.S.C. Section 1981A;

B. Enter an Order that Defendants to make Plaintiff whole with full back pay, benefits and reinstatement to a position Mr. Ogu would have obtained in the absence of discrimination or, in the alternative, front pay.

C. An award to Mr. Ogu for compensatory damages in amount to be shown at trial for past and future economic and non-economic losses, including extreme emotional distress and mental anguish, impairment of the quality of life; and consequential loses;

D. An award to Mr. Ogu for exemplary and/or punitive damages in an amount to be shown at trial;

E. An award for reasonable attorneys' fees and costs, including but not limited to expert witness fees, as provided in Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e-5(k), 42 U.S.C. Section 1981A, 42 U.S.C Section 1988 and as provided under state law;

20

F. An award to Mr. Ogu of interest on any awards at the highest rate allowed by law; and

G. Such other and further relief as this Court deems just and appropriate. PLAINTIFF REQUESTS TRIAL TO A JURY ON ALL CLAIMS ALLOWED BY LAW.

Respectfully submitted this 29th day of March, 2016.

s/ A. Eva Borghei_____
A. Eva Borghei OBA #22499
Borghei Law Offices PLLC
4312 N. Classen Blvd.
Oklahoma City, OK 73118
Telephone:   (405) 525-0777
Facsimile     (405) 557-0777
e-mail:         borgheilaw@gmail.com
*Counsel for Plaintiff*

s/ M. Mark Myles_____
M. Mark Myles OBA #22243
M. Mark Myles, P.C.
4312 N. Classen Blvd.
Oklahoma City, OK 73118
Telephone:   (405) 525-0777
Facsimile     (405) 557-0777
e-mail:         mm_myles@outlook.com
*Counsel for Plaintiff*