UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1)　　CHARLES　　EKENE　　OGU, individually | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. |
| vs. | § § | CIV-16-296-D |
| (2) PATHFINDER, a Schlumberger subsidiary company, and (3) SCHLUMBERGER, an international corporation, | § § § § § | |
| Defendant. | § § | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Nancy L. Patterson
Texas State Bar No. 15603520
(Admitted *pro hac vice*)
Michael P. Jones
Texas State Bar No. 24072174
(Admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
1000 Louisiana, Suite 4000
Houston, Texas 77002
(713) 890-5000 - Telephone
(713) 890-5001 - Facsimile
Nancy.Patterson@morganlewis.com
Michael.Jones@morganlewis.com

Crystal A. Johnson, OBA #21715
Conner & Winters, LLP
1700 One Leadership Square
211 North Robinson
Oklahoma City, Oklahoma 73102
(405) 272-5711 - Telephone
(405) 232-2695 - Facsimile
cjohnson@cwlaw.com

*Counsel for Defendants*

Dated: December 4, 2017

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................ 3

II. STATEMENT OF UNDISPUTED FACTS ........................................................... 5

III. SUMMARY JUDGMENT STANDARD .............................................................. 8

IV. ARGUMENT AND AUTHORITIES ..................................................................... 9

    A.    Ogu's Standard of Proof Under Title VII for Claims of Disparate Impact and Disparate Treatment Discrimination ..................................................... 9

    B.    Ogu Cannot Establish a *Prima Facie* Case of Discrimination and Many of His Allegations Are Time Barred ............................................................. 11

        1.    Ogu's Allegations of Discrimination Are Barred by Limitations............ 11

        2.    Ogu Has Not Plead a "Continuing Violation" and Cannot Show a "Continuing Violation." ......................................................................... 12

        3.    Ogu's Disparate Impact Claim Fails Because STC Has No Practice that Disparately Impacted Ogu ............................................................. 13

        4.    Ogu Did Not Suffer Any Adverse Employment Action as a Result of Any Alleged Discrimination............................................................. 14

        5.    Ogu Cannot Establish That He Was Constructively Discharged............. 16

    C.    STC Had a Legitimate and Non-Discriminatory Reason for Not Transferring Ogu into an Office Role ................................................... 17

    D.    Ogu's Claim for Intentional Infliction of Emotional Distress Fails .................... 19

V. CONCLUSION ........................................................................................................ 20

VI. PRAYER .............................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................................................9

*Bennett v. Windstream Cmmcn's, Inc.*,
    30 F. Supp.3d 1243, 1257 (N.D. Okla. 2014)...............................................18, 19

*Boyer v. Cordant Technologies, Inc.*,
    316 F.3d 1137 (10th Cir. 2003) .........................................................................12

*Branson v. Price River Coal Co.*,
    835 F.2d 768 (10th Cir. 1998) ....................................................................10, 19

*Burkley v. Correctional Healthcare Mgmt. of Oklahoma, Inc.*,
    141 Fed. Appx. 714 (10th Cir. 2005).................................................................12

*Burlington Indus., Inc. v. Ellerth*,
    524 U.S. 742 (1998)..........................................................................................14

*Cardosa v. Calbone*,
    490 F.3d 1994 (10th Cir. 2007) ...........................................................................9

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)............................................................................................9

*Computer Publ'ns, Inc. v. Welton*,
    49 P.3d 732 (Okla. 2002)...................................................................................19

*Daniels v. C.L. Frates and Co.*,
    641 F. Supp.2d 1214 (W.D. Okla. 2009).....................................................19, 20

*Hillig v. Rumsfeld*,
    381 F.3d 1028 (10th Cir. 2004) .........................................................................14

*Jones v. Barnhart*,
    349 F.3d 1260 (10th Cir. 2003) .........................................................................18

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)............................................................................................9

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973)..........................................................................................10

*McKnight v. Kimberly Clark Corp.*,
    149 F.3d 1125 (10th Cir. 1998) ...................................................................16

*National R.R. Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002)..................................................................................10

*Ricci v. DeStefano*,
    557 U.S. 557 (2009).............................................................................10, 13

*Stover v. Martinez*,
    382 F.3d 1064 (10th Cir. 2004) ...........................................................10, 19

*Texas Dep't of Cmty. Affairs v. Burdine*,
    450 U.S. 248 (1981)..................................................................................10

*Vann v. Southwestern Bell Telephone Co.*,
    179 Fed. Appx. 491 (10th Cir. 2006)..........................................................17

*Wheeler v. BNSF Ry. Co.*,
    418 Fed. Appx. 738 (10th Cir. 2011)..........................................................15

## STATUTES

42 U.S.C. § 2000e-2(a) ....................................................................................11

42 U.S.C. § 2000e-2(k)(1)(A)(i) .................................................................10, 13

42 U.S.C. § 2000e-5(e)(1).................................................................................11

Borghei Law...................................................................................................23

Title VII of the Civil Rights Act of 1964.................................................... passim

Family Medical Leave Act.................................................................................20

## OTHER AUTHORITIES

FED. R. CIV. P. 56(a) ..........................................................................................9

Federal Rule of Civil Procedure 56 .....................................................................8

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## AND BRIEF IN SUPPORT

Defendants Pathfinder[1] ("Pathfinder") and Schlumberger ("Schlumberger") (collectively "STC") file their Motion for Summary Judgment on all of Plaintiff Charles Ekene Ogu's claims of discrimination and intentional infliction of emotional distress and state as follows:

## I.
## INTRODUCTION

This is an employment discrimination case. Ogu filed this lawsuit on March 29, 2016, alleging that STC discriminated against him on the basis of his race (African-American), color (Black), and national origin (Nigerian). Ogu also alleges a cause of action for intentional infliction of emotional distress in connection with his claims for discrimination. The undisputed facts, however, establish that Ogu quit his job the same day that he was reprimanded for abandoning a jobsite. Facing imminent termination for several violations of STC policy in 2014, Ogu voluntarily chose to leave his position with STC.

Ogu worked for STC in Oklahoma City as a Directional Drilling Engineer. Ogu previously worked for STC in the United Arab Emirates and in Yemen before being transferred to the United States. STC was aware of Ogu's race and national origin when he was transferred to Oklahoma City in 2011. Ogu was promoted to a Grade 11 Directional

---

[1]      There is no legal entity named "Pathfinder." At all relevant times, Ogu was employed by Schlumberger Technology Corporation.

Drilling Engineer upon successful completion of all required training as part of the Fixed Step program in 2012.

Ogu received several disciplinary warnings shortly prior to his November 2014 resignation.  In April 2014, Ogu was investigated for payroll fraud.  Specifically, it was determined that Ogu had manually adjusted his timesheets to reflect a higher day rate bonus than he was eligible to receive.  Prior to November 2013, employees manually entered their timesheets and applicable day rate.  Ogu's erroneous day rate entries resulted in him receiving a total overpayment of $74,380.00.  Ogu was admonished that his payroll sheets were wrong and he was informed of his correct day rate.

On July 2, 2014, Ogu received a "final warning" because he was often unreachable and thus unable to report to work.  This written warning followed verbal coaching due to the same performance issue.  Ogu received another warning on November 17, 2014 for abandoning his job without informing his supervisors or anyone else at STC so that a replacement could be assigned.  Ogu resigned from STC on November 17, 2014 – the same day he received the warning for job abandonment.

STC is entitled to summary judgment on all of Ogu's claims because Ogu has not and cannot raise a genuine issue of material fact regarding any of his claims.  Additionally, Ogu's claims of discrimination are barred by limitations, leaving only his claim for intentional infliction of emotional distress, which fails because Ogu cannot establish any of the factors required under Oklahoma law.  It is worth noting that Ogu has not served discovery nor taken any depositions in this case.  Ogu also failed to file his exhibit list or witness list, which were due on August 7, 2017.

4

## II.
## STATEMENT OF UNDISPUTED FACTS

1.      Ogu is an engineer.  Ogu began working for STC in 2007.  Ex. 1, Excerpts

from the Deposition of Charles Ekene Ogu ("Ogu Depo.") at p. 61:7-11.  STC initially

hired Ogu to work in the United Arab Emirates ("UAE") as a Field Engineer 1.  *Id*. at

61:12-14; p. 62:5-12.  Ogu was later transferred from the UAE to work in Yemen, where

he was a Grade 10 Field Engineer.  *Id*.; p. 62:17-23.  Ogu then received an offer to move

to the United States in October 2010.  *Id*. at p. 63:15-17.  Ogu was offered a position in

Oklahoma City as a Directional Driller 1 Field Engineer ("DD1FE").  *Id*. at p. 63:14-64:21.

A DD1FE is a field position and Ogu was responsible for supervising drilling operations

out on land-based drilling rigs for STC's customers.  *Id*.; p. 78:23-79:15. Ogu was required

to agree to, and did receive and acknowledge, several of STC's policies and procedures

regarding, among other things, STC's policies prohibiting discrimination upon his transfer

to the United States.  *Id*. at p. 67:1-71:1.

2.      STC utilizes a lock-step program for Directional Drilling engineering

positions. Ex. 2, Declaration of Uzma Babar, ¶ 4. This program is called the Fixed Step

program.  *Id*.  Employees such as Ogu are given job responsibilities and are paid based on

their Grade.  *Id*. at ¶ 4, 7.  Employees who are in a Fixed Step position receive promotions

once they complete set requirements, including, but not limited to, training courses,

projects, and reviews of job-related materials.  *Id*. at ¶ 6.  These requirements provide the

employee with a number of technical and non-technical skills.  *Id*.  Once the employee

completes these requirements and obtains the necessary skills, promotions are generally

granted on approval of line management.  *Id*.  Ogu completed the requirements for promotion to a Grade 11 General Field Engineer Directional Driller ("GFEDD") position in August 2012.  *Id*.  Ogu's manager approved his promotion and Ogu was promoted to Grade 11 GFEDD the next month, in September 2012.  *Id*.

3.      Despite understanding that he was hired to work in Oklahoma City out in the field, Ogu contends that he asked his manager for a transfer from the field, even into a "lower position."  *See* Ex. 1, p. 137:4-18.  Ogu did not care where he was transferred to, even if it was to another state, another country, or back to Nigeria.  *Id*.  The driving force behind Ogu's request for a transfer was so that he could have "a schedule."  *Id*. at p. 84:24-85:10. Ogu's job required that Ogu be available to travel to a rig on short notice and remain on site until his job was completed.  *Id*. at p. 78:23-79:15. Ogu contends that his supervisor, Randy Koukal, told Ogu he would work on trying to find Ogu an office position but that Ogu similarly had to make progress in his current position.  *Id*. at p. 88:17-89:6.

4.      STC has two subsets of Directional Drillers: specialists and engineers.  Ex. 2 at ¶ 5.  Specialists are paid a lower salary, but receive a high day rate whereas engineers are paid a higher base salary and a lower day rate.  *Id*.  As an engineer, Ogu was a Directional Drilling Engineer, as his title and qualifications connotes.  *Id*. at ¶ 6.  As a Grade 11 GFEDD, the day rate bonus in 2013 and 2014 for Oklahoma City was $550 per day, which is the rate Ogu was eligible for and supposed to be paid.  *Id*. at ¶ 7.

5.      Ogu was investigated for payroll fraud in early 2014.  *Id*. at ¶ 10.  Prior to November 2013, employees manually entered timesheets and manually selected their applicable day rate.  *Id*.  This error resulted in an overpayment to Ogu of $74,380.00.  *Id*.

Because it appeared that Ogu's actions were not intentionally malicious, but were rather the result of Ogu's failure to understand his role and compensation structure, Schlumberger did not take disciplinary action against him.  *Id*.  Ogu was advised that his payroll sheets were wrong, however, and STC explained his correct day rate to him.  *Id*.  Ogu seems to have a fundamental misunderstanding of the day rate he was eligible for.  Further, Directional Drillers in other markets and in other countries may get paid different day rates than what Ogu was eligible for.

6.     Ogu received two written disciplinary warnings after he was promoted to Grade 11 GFEDD.  *Id*. at ¶ 11 and 12.  On July 2, 2014, Ogu received a "final warning" for failing to return his manager's calls and failing to report to work.  *Id*. ¶ 11. That warning states that there have been several times in 2014 when Ogu was not available when called upon to perform a job.  *Id*.; Ex. 2-1, Warning.  Ogu received verbal warnings before receiving a written warning.  *Id*.  Ogu was reminded that he needed to contact his managers if he would be unavailable to work so that other employees could cover his job.  *Id*.

7.     Following that warning, in November of 2014, Ogu abandoned his position on the rig he was assigned.  *Id*. at ¶ 12.  He did not tell any Schlumberger employee that he needed to leave and drove from the rig following his shift.  *Id*.  Driving at night following a shift is a serious violation of Schlumberger's Health, Safety, and Environment (HSE) procedures.  *Id*.  Because Ogu abandoned his position, it was necessary for Schlumberger to call out another Directional Driller to complete the work for which Ogu was responsible.  *Id*.  This behavior was similar to the behavior for which Ogu had previously received a final warning just a few months earlier in July 2014.  *Id*.  A result, a second warning was

7

prepared outlining the deficiencies in Ogu's job performance and his misconduct. *Id*.; Ex. 2-2, Second Warning.

8.     Because Ogu was under final warning at the time he abandoned his job site in November 2014, Schlumberger began the process of terminating Ogu's employment. *Id*. at ¶ 13.   Ogu, however, submitted a letter of resignation on November 17, 2014—the same day his supervisor admonished him for abandoning his job.   *Id*.   Because Schlumberger was already in the process of terminating his employment, it immediately accepted Ogu's resignation.   *Id*.   Had Ogu not submitted a letter of resignation, his employment would have been terminated regardless.   *Id*.

9.     Ogu tried to retract his resignation just a few weeks after he resigned.   *Id*. at ¶ 14.   STC does not have any policy that allows an employee to retract a resignation.   *Id*. STC did not allow Ogu to retract his resignation because it already accepted and processed his resignation.   *Id*. Ogu's first complaint of discrimination followed STC's refusal to allow him to retract his resignation and this lawsuit followed.   *Id*.

### III.
### SUMMARY JUDGMENT STANDARD

STC moves for summary judgment under Federal Rule of Civil Procedure 56. Summary judgment is appropriate under Rule 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]   The summary judgment burden initially resides with the movant to present the

---

[2]     FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

8

basis for the motion and the elements of the causes of action upon which the non-movant

will be unable to establish a genuine issue of material fact.[3]   When the moving party has

carried this burden, the non-movant "must do more than simply state that there is some

metaphysical doubt as to the material facts" to avoid summary judgment.[4]

Instead, "[f]or dispositive issues on which the plaintiff will bear the burden of proof

at trial, he must 'go beyond the pleadings and designate specific facts so as to make a

showing sufficient to establish the existence of an element essential to his case in order to

survive summary judgment.'"[5]   Importantly, "evidence, including testimony, must be

based on more than mere speculation, conjecture, or surmise" and "unsubstantiated

allegations carry no weight in summary judgment proceedings."[6]   Summary judgment is

appropriate in this case because Ogu cannot establish a genuine issue of material fact with

respect to any of his claims.

## IV.
## ARGUMENT AND AUTHORITIES

### A.     Ogu's Standard of Proof Under Title VII for Claims of Disparate Impact and Disparate Treatment Discrimination

Ogu contends that STC discriminated against him on the basis of his race (African

American), color (Black), and national origin (Nigerian) in violation of Title VII of the

Civil Rights Act of 1964, as amended ("Title VII").   Ogu asserts claims for both disparate

impact and disparate treatment discrimination under Title VII.

---

[3]     *Celotex Corp.*, 477 U.S. at 323.
[4]     *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).
[5]     *Cardosa v. Calbone*, 490 F.3d 1994, 1197 (10th Cir. 2007).
[6]     *Id*. (citing *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006)).

To establish a *prima facie* case of *disparate impact* discrimination, Ogu must show that STC uses a particular employment practice that causes a *disparate impact* on a particular class of individuals based on color, religion, sex, or national origin.[7]  To create a *prima facie* case of *disparate treatment* discrimination, Ogu must show: (1) he is a member of a protected class; (2) that he experienced an adverse employment action; and (3) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination, for example, that a similarly situated individual in a non-protected class was treated more favorably.[8]   When, as here, the plaintiff asserts discrimination based on separate and distinct incidents, he must establish a *prima facie* case of discrimination for each incident separately.[9]   It is well settled that subjective beliefs of discrimination alone are insufficient to establish a *prima facie* case.[10]

Ogu's claims of race, color, and national origin discrimination fail because he is unable to establish a *prima facie* case for any of the separate and distinct incidents he alleges were discriminatory.  Specifically, Ogu cannot show that he suffered any adverse employment action while at STC, and Ogu has no evidence that STC had a practice, policy, or procedure that disparately impacted individuals in his protected classes or that any non-protected employee was treated more favorably than Ogu.

---

[7]     *Ricci v. DeStefano*, 557 U.S. 557, 578 (2009); 42 U.S.C. § 2000e-2(k)(1)(A)(i).

[8]     *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–3 (1981).

[9]     *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).

[10]    *Stover v. Martinez*, 382 F.3d 1064, 1072 (10th Cir. 2004); *Branson v. Price River Coal Co.*, 835 F.2d 768, 772 (10th Cir. 1998).

**B.**     **Ogu Cannot Establish a *Prima Facie* Case of Discrimination and Many of His Allegations Are Time Barred**

Title VII prohibits discrimination against an individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of, *inter alia*, such individual's race, color, or national origin. 42 U.S.C. § 2000e-2(a).

**1.     Ogu's Allegations of Discrimination Are Barred by Limitations.**

Ogu filed his charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 30, 2014.[11]  Because Oklahoma has a state anti-discrimination law, an aggrieved employee must file a charge with the EEOC within 300 days from an unlawful employment practice for the charge to be timely.  42 U.S.C. § 2000e-5(e)(1).  In Ogu's case, he can only complain of alleged discriminatory acts ***occurring after*** March 5, 2014.

All of Ogu's allegations of discrimination occurred before the March 5, 2014 date and, thus, are well outside the 300-day time period.  These allegations include: that STC failed to transfer him in 2011 when supervised by Randy Koukal and in 2013 when supervised by Chris Brockman (Doc. 1, ¶¶ 19 and 20); that STC's failed to timely pay Ogu for vacation in 2012 (Doc. 1, ¶ 23); that STC paid him an incorrect day rate in 2012 and 2013 (Doc. 1, ¶¶ 29–31 and 34); that he was summoned to a meeting to discuss payroll fraud in January 2014 (Doc. 1, ¶¶ 36); and that someone made a stray remark that Ogu could not get "onboard" because he is not a U.S. Citizen in November 2013 (Doc. 1, ¶¶ 34 and 35).  All of Ogu's allegations of discrimination, even if taken as true, occurred well

---

[11]     *See* Doc. 1, ¶ 9(a); Ex. 1-3, Ogu's Charge of Discrimination filed with the EEOC.

before the 300-day limitations period.   Therefore, Ogu cannot seek recovery for these incidents because they are time barred as a matter of law.   Summary judgment is proper on all of Ogu's disparate treatment claims.

        **2.**        **Ogu Has Not Plead a "Continuing Violation" and Cannot Show a "Continuing Violation."**

Although Ogu did not plead the continuing violation doctrine in his Complaint or in his Charge of Discrimination, which is fatal to its application, it is nonetheless inapplicable to Ogu's claims because they are discrete and separate allegations.

The only exception to the 300-day limitation period is the continuing violation doctrine, which applies only when an unlawful employment practice manifests itself over time, rather than as a series of discrete acts.[12]   Under the continuing violation theory, a plaintiff must show an organized scheme leading to and including a present violation, so that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action.[13]

As an initial matter, not one of Ogu's allegations of discrimination is a "present violation"—all fall outside the 300-day limitations period, making the continuing violation doctrine inapplicable.   Notwithstanding that fact, Ogu's allegations of discrimination are discrete occurrences, as evidenced by the fact that each complaint involves a different allegation and a different actor.   Ogu's allegations are not subject to the continuing

---

[12]    *Boyer v. Cordant Technologies, Inc.*, 316 F.3d 1137, 1138–39 (10th Cir. 2003).

[13]    *Burkley v. Correctional Healthcare Mgmt. of Oklahoma, Inc.*, 141 Fed. Appx. 714, 716 (10th Cir. 2005).

violation doctrine and are time barred.  Accordingly, summary judgment is proper on all of Ogu's disparate treatment claims.

### 3.    Ogu's Disparate Impact Claim Fails Because STC Has No Practice that Disparately Impacted Ogu

As mentioned above, to state a *prima facie* case for disparate impact discrimination, Ogu must show that STC uses a particular employment practice that causes a disparate impact to employees on the basis of color, religion, sex, or national origin.[14]  Ogu alleges in a conclusory fashion that STC's promotional procedures negatively impact minority employees and African-American employees on a company-wide basis.  (Doc. 1, ¶ 52.). This allegation, alone, is insufficient to carry Ogu's burden for his *prima facie* case.

Ogu was wholly unable to substantiate his disparate impact allegation during his deposition.  Ogu could not identify what the promotion process is at STC, nor could he provide information or evidence regarding the number of African American employees who were promoted in 2011 at STC, the number of locations STC has around the world, or the number of minority employees who are promoted in any given year at STC.[15]  Ogu admitted that he has no evidence regarding the number of minorities promoted at STC, thus he cannot articulate any claim that STC employed a promotion practice that had a disparate impact on minority employees.[16]  Ogu's allegation is also significantly undermined by the fact that STC promoted Ogu in 2012—a fact that Ogu admits and acknowledges.  Because Ogu has no evidence to support his unfounded allegation that STC has an employment

---

[14]    *Ricci v. DeStefano*, 557 U.S. 557, 578 (2009); 42 U.S.C. § 2000e-2(k)(1)(A)(i).
[15]    Ex. 1, Ogu Depo, p. 299:22-307:6.
[16]    *Id*.

practice that causes a disparate impact on minorities, summary judgment is warranted on Ogu's disparate impact claim.

### 4.    Ogu Did Not Suffer Any Adverse Employment Action as a Result of Any Alleged Discrimination.

Although Ogu's discrimination claims are time barred, STC will nevertheless address his claims out of an abundance of caution and demonstrate why summary judgment is still proper.  First and foremost, Ogu is wholly unable to establish that he suffered any adverse employment action as a result of the alleged discrimination.

It is well settled that Ogu must establish that he suffered an adverse employment action in order to establish a *prima facie* case of discrimination under Title VII.[17]  An adverse employment action is one that "constitutes a ***significant*** change in employment status, such as hiring, firing, failure to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[18]  A mere inconvenience or an alteration of job responsibilities is not an adverse employment action.[19]  Ogu alleges that he was subjected to discrimination in the workplace in the for the following reasons: (1) he was not moved to an "office" job; (2) he allegedly did not timely receive compensation for vacation time; (3) he did not receive what he believed was his proper day rate; and (4) he allegedly learned second hand of a potential stray remark about his citizenship status.  None of these complaints constitutes an adverse employment

---

[17]    *Hillig v. Rumsfeld*, 381 F.3d 1028, 1030–31 (10th Cir. 2004).
[18]    *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (emphasis added).
[19]    *Hillig*, 381 F.3d at 1031.

action as a matter of law and, therefore, Ogu's discrimination claim also fails for this reason.

The Request for Transfer to Office Job.  As discussed above, Ogu was promoted to a Grade 11 position in 2012 upon completion of all job requirements.  Ogu's only complaint is that he was not transferred from the field into an office job or, alternatively, out of the country.[20]  Ogu did not seek a transfer to an office position for financial or professional gain, rather, he sought a transfer for personal convenience.  This does not constitute an adverse employment action as a matter of law.

The Vacation Pay Issue.  Ogu admits in his Complaint that he was paid for his vacation.  (Doc 1, ¶ 23).  Thus, this cannot be the basis for a discrimination claim.

The Day Rate Issue.  Ogu received a day rate of $550/day, which is the day rate paid to all Grade 11 Field Engineers in Ogu's position in Ogu's location.[21]  The fact that Ogu subjectively believes he was entitled to a higher day rate does not support a finding of discrimination and Ogu has presented no evidence that other similarly situated employees in his same position received a higher day rate.

The Alleged Stray Remark.   Finally, the remark allegedly made by a co-worker, Lyndal Cissell, even if true and despite being hearsay, amounts to nothing more than a stray remark.  Cissell was not Ogu's supervisor and this comment was allegedly made more

---

[20]     *See Wheeler v. BNSF Ry. Co.*, 418 Fed. Appx. 738, 751 (10th Cir. 2011) (holding that employer's failure to transfer plaintiff did not constitute an adverse employment action because the desired transfer was only for subjective reasons.).

[21]     Ex. 2, Babar Decl. at ¶ 7.

than a year before Ogu quit his job.[22]  This allegation loses all credibility in light of the fact that Ogu continued to work for STC for more than one year after he claims to have heard this comment.

Because Ogu did not experience any adverse employment action as a result of the alleged discrimination, his claim fails.   Summary judgment is proper on all of Ogu's disparate treatment claims.

### 5.   Ogu Cannot Establish That He Was Constructively Discharged

It is undisputed that Ogu resigned from his employment with STC.[23]  Indeed,  Ogu unequivocally resigned from his employment STC on November 17, 2014:

> Please take this as my 2 week [sic] notification.  Effective from 1st of December 2014, I will be stop [sic] work with the company.  However, I will go ahead and start my 8 days [sic] annual leave tomorrow being 18th November 2014 till 1st December.

*See* Ex. 1-19, Resignation Email.   Notwithstanding Ogu's admission and the uncontroverted testimony that he resigned, Ogu's Complaint includes one very vague allegation of constructive discharge.[24]   Therefore, STC addresses Ogu's inability to establish constructive discharge as a matter of law out of an abundance of caution.

---

[22]     *Id*. at ¶ 6; See *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998) (discriminatory statements must be made by a decision maker and there must be a nexus between the discriminatory statement and the adverse employment action).

[23]     *See* Ex. 2, Babar Decl. at ¶ 13; Doc. 1, p. 13, ¶ 42 ("On or about November 16, 2014 . . .Mr. Ogu submitted a letter of intention to resign effective December 1, 2014"); p. 13, ¶ 43 (". . . he was notified that his resignation was accepted on November 17, 2014"); p. 15, ¶ 50 ("Defendants did not investigate the possibility of an alternative decision after Mr. Ogu informed them of revocation of his prior intent to resign").

[24]     *See* Doc. 1, p. 2 ("Mr. Ogu alleges, *inter alia*, that he was actually and constructively terminated from his employment. . ..").

To establish that a resignation constitutes a constructive discharge for purposes of a Title VII claim, an employee must show that "the employer has deliberately made or allowed the employee's working conditions to become so intolerable that the employee has no other choice but to quit."[25]  Ogu cannot make this showing.  Rather, the undisputed facts establish that Ogu resigned the same day he was reprimanded for abandoning a job site. Ogu's resignation letter does not reference any issues with his work environment and Ogu had never before complained to anyone about discrimination or harassment.   Ogu's inability to establish a claim for constructive discharge is underscored by the fact that he tried to retract his resignation on December 6, 2014.  Ex. 1-23 (". . . I've decided to retreat from my earlier notification for resignation, consequently, I withdraw my intentions to resign from the company").   It is disingenuous to suggest that STC constructively discharged Ogu by making the work environment "deliberately intolerable," but that Ogu only needed a few weeks' vacation to recover and resume working for STC.

To the extent Ogu claims to have been constructively discharged, that claim fails as a matter of law.

**C.     STC Had a Legitimate and Non-Discriminatory Reason for Not Transferring Ogu into an Office Role**

As discussed above, it is clear that Ogu cannot establish a *prima facie* case of discrimination.  Even assuming he is able to do so, STC can easily meet its burden of production to rebut any *prima facie* showing.  To defeat the presumption of discrimination

---

[25]     *Vann v. Southwestern Bell Telephone Co.*, 179 Fed. Appx. 491, 498 (10th Cir. 2006) (citing *MacKenzie v. City of Denver*, 414 F.3d 1266, 1281 (10th Cir. 2005)).

created by the *prima facie* case, STC must articulate a legitimate, non-discriminatory reason for their action.[26]  The burden to produce a legitimate, non-discriminatory reason is one of production, not persuasion; it can involve no credibility assessment.[27]

Ogu's primary allegation of discrimination is that STC did not transfer him to an office position, either in Oklahoma or in some other STC office globally.  To be clear, it is critical to note that Ogu did not seek a transfer into an office position for financial or professional gain.  Instead, Ogu sought an office job so that he had a more predictable schedule.  STC's legitimate and non-discriminatory reason for not moving Ogu into an office role is because of Ogu's weak managerial traits and his performance issues.  Though Ogu was a technically proficient employee, Ogu did not display strong managerial traits and he was unreliable.  Ogu was counselled about workplace misconduct and performance three times in 2014 alone.

STC has proffered a legitimate, non-discriminatory reason for not transferring Ogu into an office role.  The burden now shifts back to Ogu to show that the non-discriminatory reason given by STC is false or not credible, and that the real reason for the employment action was unlawful discrimination.[28]  An employee's subjective belief that his employer has given a false reason for the employment decision is not competent summary judgment evidence.[29]  To defeat STC's reason for not transferring Ogu into an office role, assuming Ogu can establish that it constituted an adverse employment action, Ogu must show that

---

[26]     *Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003).
[27]     *Bennett v. Windstream Cmmcn's, Inc.*, 30 F. Supp.3d 1243, 1257 (N.D. Okla. 2014).
[28]     *Jones*, 349 F.3d at 1266.
[29]     *Stover*, 382 F.3d at 1072 (10th Cir. 2004); *Branson*, 835 F.2d at 772.

STC's reason is a pretext to discriminate against him.[30]   Here, Ogu cannot make this showing.   Accordingly, summary judgment on Ogu's disparate treatment claim is proper.

### D.   Ogu's Claim for Intentional Infliction of Emotional Distress Fails

Ogu alleges that STC's conduct amounts to intentional infliction of emotional distress.   To state a claim under Oklahoma law for intentional infliction of emotional distress, Ogu must prove that: (1) STC acted intentionally or recklessly; (2) STC's conduct was extreme and outrageous; (3) STC's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe.[31]   Conduct is "extreme and outrageous" when it goes "beyond all possible bounds of decency, and . . . is regarded as atrocious and utterly intolerable in a civilized community."[32]

In the context of employment disputes, courts have refused to find "extreme and outrageous" behavior where: 1) a supervisor ridiculed a plaintiff in the workplace; 2) a supervisor made lewd remarks about a plaintiff and embarrassed her by discussing her faults with co-workers six times over a two-year period; and 3) a supervisor called an employee in the middle of the night, browbeating him for hours, requiring him to do unnecessary work, and making derogatory sexual comments about his fiancée.[33]

In this case, Ogu claims that certain employees in Oklahoma City knew Ogu wanted to transfer out of the field because his wife was sick, but did not let him.[34]   Ogu contends

---

[30]     *Bennett*, 30 F.Supp.3d at 1258.
[31]     *Computer Publ'ns, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002).
[32]     *Daniels v. C.L. Frates and Co.*, 641 F. Supp.2d 1214, 1217–18 (W.D. Okla. 2009).
[33]     *Id*.
[34]     Ex. 1 Ogu Depo. p. 254:1 – 255:25.

that this behavior amounted to intentional infliction of emotional distress.  As an initial matter, these allegations do not come close to reaching the level required to allege extreme and outrageous behavior.   Furthermore, Ogu has no evidence that anyone at STC intentionally or recklessly refused to transfer Ogu.   Finally, these allegations completely ignore the fact that STC provided Ogu with leave under the Family Medical Leave Act ("FMLA") when he requested it so that Ogu could take care of his family.[35]  The evidence is undisputed that STC provided Ogu with time off from work when he requested it and that Ogu returned to work without requesting any additional time off.  Ogu cannot state a claim for intentional infliction of emotional distress and this claim should be dismissed.

## V.
## CONCLUSION

Ogu's allegations of discrimination are all barred by the applicable statute of limitations.  Even if they are not barred, Ogu is unable to establish a *prima facie* case because: 1) he cannot identify any procedure at STC that disparately impacts minorities and 2) he suffered no adverse employment action.  Ogu is also unable to establish that anyone at STC intentionally or recklessly committed some extreme and outrageous act that caused him harm.  Rather, the unrefuted evidence conclusively establishes that Ogu never complained about discrimination and that he voluntarily resigned from his employment after receiving his third counselling for performance and conduct in 2014.  Ogu initiated this action solely because STC would not allow him to retract his resignation.

---

[35]      *Id.*, Ogu Depo. p. 181:13 – 183:19.

**VI.**
**PRAYER**

Defendants Pathfinder and Schlumberger respectfully request that the Court: (1) grant this motion for summary judgment; (2) dismiss all of Plaintiff's claims against the Defendants with prejudice; (3) grant the Defendants their attorneys' fees and costs; (4) enter final judgment in favor of the Defendants; and (5) grant the Defendants such other and further relief as the Defendants are entitled to receive.

Respectfully submitted,

/s/ Crystal A. Johnson
Crystal A. Johnson, OBA #21715
Conner & Winters, LLP
1700 One Leadership Square 211 North Robinson
Oklahoma City, Oklahoma 73102
Telephone: (405) 272-5711
Facsimile: (405) 232-2695
Email: cjohnson@cwlaw.com

-and-

Nancy L. Patterson
Texas State Bar No. 15603520
(admitted pro hac vice)
Michael P. Jones
Texas State Bar No. 24072174
(admitted pro hac vice)
Morgan, Lewis & Bockius LLP
1000 Louisiana, Suite 4000
Houston, Texas 77002
(713) 890-5000 – Telephone
(713) 890-5001 – Facsimile
Email: nancy.patterson@morganlewis.com
       michael.jones@morganlewis.com

COUNSEL FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that on December 4, 2017, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the registered ECF registrants.

A. Eva Borghei
Borghei Law Offices
4312 N. Classen Boulevard
Oklahoma City, Oklahoma 73118

M. Mark Myles
M. Mark Myles, P.C.
4312 N. Classen Boulevard
Oklahoma City, Oklahoma 73118

*/s/ Crystal A. Johnson*
Crystal A. Johnson