# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

CHARLES EKENE OGU,                )
individually,                     )
                                  )
    Plaintiff,                    )
                                  )
v.                                )    Case No. CIV-16-296-D
                                  )
                                  )
PATHFINDER, a Schlumberger        )
subsidiary company, and           )
SCHLUMBERGER, an international     )
corporation,                      )
                                  )
    Defendants.                   )

## ORDER

This matter comes before the Court on Defendants Pathfinder and Schlumberger's (collectively "STC")[1] Motion for Summary Judgement [Doc. No. 36]. Plaintiff Charles Ekene Ogu ("Ogu") has filed his Response and Cross-Motion for Summary Judgement [Doc. No. 41]. STC has Replied [Doc. No. 42] and Responded to the Cross-Motion [Doc. No. 47]. The matter is fully briefed and at issue.

This lawsuit arises from Ogu's employment for STC in Oklahoma City, where he alleges that STC's promotion and post-discharge policies have a disparate impact on black employees, both African American and non-U.S. citizens. He also alleges he was subjected

---

[1] In their principal brief, Defendants explain that Plaintiff was employed by Schlumberger Technology Corporation, and collectively refer to it and Schlumberger as "STC"; Plaintiff follows suit in his response brief.

to discrimination based on his national origin which, in turn, resulted in intentional infliction of emotional distress. His claims arise under the civil rights statutes, specifically, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981, and the common law. The following material facts are undisputed, and along with all reasonable inferences, are viewed in the light most favorable to Ogu.

## UNDISPUTED MATERIAL FACTS[2]

Ogu is a Nigerian national who was employed by STC in Oklahoma City from January 2011 until November 2014 as a Directional Drilling Engineer. The Directional Drilling Engineer position is a field position responsible for supervising drilling operations on land-based drilling rigs for STC's customers and involves an irregular schedule and extended periods at drilling rigs away from one's home and family.

During her pregnancy in 2011, Ogu's wife began experiencing health issues and suicidal thoughts. The lengthy absences from home required by his position as a Directional Drilling Engineer prevented Ogu from monitoring his wife's condition and the safety of his children. As a result, Ogu requested a transfer from the field to a position of either equal or lesser status in order to obtain "a more set work schedule." Deposition of Charles Ekene Ogu [Doc. No. 36-1] at 85:17-19. In seeking a transfer, Ogu informed his management team of his wife's ongoing mental health issues and his concerns for the safety of his children.

---

[2] This statement includes material facts presented by Defendant that are properly supported and not opposed in the manner required by Rule 56(c) as well as additional facts presented by Plaintiff that are properly supported. All facts are stated in the light most favorable to Plaintiff.

In August 2012, Ogu's wife gave birth and her mental health condition deteriorated further. Throughout his employment with STC in Oklahoma City, Ogu's wife suffered delusional thoughts, attempted suicide several times, and placed their children's lives in danger. On one of these occasions, while Ogu was working on a rig site, Ogu's wife locked herself and the children in their home for a week without food and attempted suicide

In September 2012, Ogu was promoted to Grade 11 General Field Engineer Directional Driller pursuant to STC's "fixed step" program. However, this promotion did not include a transfer to an office position or another position with a fixed schedule, and Ogu's concerns regarding his wife and children continued.

Eventually, concern regarding his wife's mental health became so critical that Ogu informed STC that transfer to "any position at all" either in the U.S. or Nigeria would be acceptable. [Doc. 36-1] at 137:158. He informed STC that he was even willing to accept a lower position in the company in order to address the needs of his family. Ogu's requests for either a fixed schedule or a transfer out of the field continued throughout the remainder of his employment.

Despite his continued requests, Ogu never received a transfer. Ogu asserts that this refusal, despite knowledge of his family troubles, constituted intentional infliction of emotional distress. Ogu also asserts that he was denied promotion or transfer out of the field due to the disparate impact of the promotion process on his race, but admits he has no data or personal knowledge related to the racial impact of STC's promotion process.

Ogu also claims to have been subjected to discrimination in the workplace on the basis of his race and national origin. During his nearly four years of employment with STC

in Oklahoma City, Ogu reported derogatory comments to his supervisors "a couple of times." [Doc. No. 41-6] at 368:18. Ogu alleges two specific examples of discriminatory comments: (1) between November 2013 and January 2014, he overheard someone repeating an alleged comment from a manager that "she cannot afford to get Mr. Ogu on board in drilling because he is not a U.S. citizen"; and, (2) a single, undated comment from a co-worker who told Ogu he never wanted "any black guy to work with him." [Doc. No. 1] at 11; [Doc. No. 41-6] at 369:21-22.

In early 2014, STC investigated Ogu for payroll fraud finding that Ogu had been receiving a higher, incorrect day rate bonus to which he was not entitled. However, STC determined there was no intentional wrongdoing, took no disciplinary action against Ogu, and did not seek repayment of any alleged overpayment. Ogu's day rate was thereafter reduced to what STC states was the correct day rate. STC presents evidence in support of the corrected day rate. Ogu presents no contradictory evidence.

In April 2014, Ogu filed for and received FMLA leave from mid-April to the end of May 2014 to deal with his wife's hospitalization due to her third suicide attempt and to care for his children. After his return from FMLA leave, Ogu continued to miss work and leave the job site. On July 2, 2014, STC issued a "final warning" to Ogu for repeated absences from, and abandonment of, the work site and his lack of availability for communication with his manager after his return from leave. This warning included an "Employee Acknowledgment" stating that:

> Schlumberger is an "at-will" employer, meaning that my employment has no specified term and that the employment relationship may be terminated any time at the will of either party on notice to the other.

Declaration of Uzma Babar [Doc. No. 36-2], Exhibit 1. During his deposition, Ogu acknowledged that he understood his employment was at-will and that STC could terminate his employment for any reason "as long as it was not an illegal reason." [Doc. No. 36-1] at 71:16-17.

On November 16, 2014, Ogu left his job site without permission. Ogu asserts that the reason for this was due to another family emergency. On November 17, 2014, at 1:50 a.m., Ogu sent his supervisor an email stating his last day of employment would be December 1, 2014. Later in the afternoon of November 17, 2014, a written warning was prepared indicating Ogu had improperly left the job site. Neither Ogu nor his supervisor signed this warning. Instead, Ogu was informed via email on November 18, 2014, that his resignation had been accepted as of November 17, 2014. STC emailed Ogu regarding the acceptance of his resignation and instructed him to return all equipment to his supervisor, Chris Brockman, by November 18, 2014. On December 6, 2014, Ogu sent an email stating he was rescinding his resignation. STC informed Ogu on December 8, 2014, that his resignation had been accepted effective November 17, 2014.

On December 30, 2014, Ogu filed a Charge of Discrimination with the EEOC alleging discrimination based on his race and national origin in violation of Title VII of the Civil Rights Act of 1964, as amended. His Charge of Discrimination also alleged discrimination based on his association with a disabled person in violation of the Americans with Disabilities Act of 1990, as amended (ADAAA).

On March 29, 2016, Ogu filed his Complaint [Doc. No. 1] stating claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, et seq., as amended, for disparate impact on the basis of race and disparate treatment on the basis of national origin. Ogu also states a tort claim for intentional infliction of emotional distress.

## STANDARD OF DECISION

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Universal Underwriters Ins. Co. v. Winton*, 818 F. 3d 1103, 1105 (10th Cir. 2016). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and "[a]n issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The court's inquiry must be whether the evidence, when viewed "through the prism of the substantive evidentiary burden," *Anderson*, 477 U.S. at 254, "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. Although the Court views all facts in the light most favorable to the nonmoving party at the summary judgement stage, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id*. at 249 (citations omitted).

"[I]n opposing a motion for summary judgment, the nonmoving party 'cannot rest on ignorance of facts, on speculation, or on suspicion.'" *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (quoting *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988)). The nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery."[3] *Anderson*, 477 U.S. at 257.

## DISCUSSION

In its motion, STC makes the following arguments: (1) many of Ogu's allegations are time-barred; (2) Ogu cannot state a prima facie case for disparate impact or disparate treatment discrimination; (3) even if Ogu could establish a prima facie case, STC had a legitimate, non-discriminatory reason for its actions; and, (4) Ogu cannot establish the elements of an intentional infliction of emotional distress claim.

---

[3] The discovery deadline was January 4, 2018, five days prior to Ogu filing his Response. Order [Doc. No. 34] at 1. At no time did Ogu inform the Court of any failure to comply with discovery, nor did he seek an extension of the discovery deadline. Ogu presents no evidence of his attempts to pursue discovery. Instead, Ogu attaches emails from defense counsel inquiring about STC's discovery efforts. [Doc. No. 41-4]; [Doc. No. 41-5]. Ogu argues that STC had "not provided [Ogu] with names of persons who could shed light on the disputed facts." [Doc. No. 41] at 12. However, STC presents evidence that Ogu was in possession of its Fed. R. Civ. P. 26(a)(1) initial disclosures, including names of individuals with personal knowledge of this case and contact information, nearly six months prior to the discovery deadline. [Doc. No. 47-1]. Ogu's failure to conduct discovery despite ample opportunity to do so does not alter the Rule 56 standards.

## I.  Timeliness of the Title VII Allegations

Ogu asserts claims of disparate impact based on his race and disparate treatment based on his national origin under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.  The filing provisions of Title VII, 42 U.S.C. § 2000e-5(e)(1), specify that "in a case of an unlawful employment practice . . . such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred."[4]  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122, 122 S. Ct. 2061, 2077, 153 L. Ed. 2d 106 (2002).[5]  "Only those allegations addressing conduct that occurred within the 300-day window are timely for the purposes of [] disparate treatment, disparate impact, and retaliation claims."[6]  *Semsroth v. City of Wichita*, 304 Fed. Appx. 707, 717 (10th Cir. 2008).  Ogu filed his charge with the EEOC on December 30, 2014.  [Doc. No. 36-1], Ex. 3.  Therefore, the three-hundred-day window for actionable conduct began March 5, 2014.  Any conduct which occurred prior to that date is time-barred.

---

[4] STC does not argue that Ogu has failed to satisfy any other administrative prerequisite. Therefore, the Court will only address whether Ogu's claims comply with Title VII's three-hundred-day statute of limitations.

[5] Ogu claims that *Morgan* has been overruled.  Ogu does not cite to any Supreme Court case purporting to overrule this decision.  The Court's research revealed no such ruling.

[6] Ogu mentions "pattern or practice" in his cause of action for national origin discrimination.  [Doc. No. 1] at 16-17.  If he is attempting to assert the "pattern or practice method of proof" to overcome the three-hundred-day time bar, it is ineffectual.  The Tenth Circuit held in *Semsroth* "that individual plaintiffs may not utilize the pattern or practice method of proof in Title VII suits." *Semsroth*, 304 Fed. Appx. at 717.

Ogu does not refute STC's charge that many of his allegations are time-barred. Instead, Ogu asserts in his Response that the continuing violation doctrine applies to his allegations of race discrimination. [Doc. No. 41] at 16-17. However, the continuing violation doctrine applies only to hostile work environment claims. *Semsroth v. City of Wichita*, 304 Fed. Appx. 707, 715 (10th Cir. 2008). Ogu's Complaint does not assert a claim for hostile work environment.

Because Ogu does not assert a claim for hostile work environment, his claims of race and national origin discrimination are claims of discrete discriminatory acts. Such claims are distinct and "different in kind" from hostile work environment claims. *Morgan*, 536 U.S. at 115. "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify." *Morgan*, 536 U.S. at 114. All of the alleged acts of discrimination put forth by Ogu are easily identifiable as discrete occurrences as described in *Morgan* as they are largely based in "termination, failure to promote, [and] denial of transfer." *Id.*

Ogu bases his Title VII claims on the following discrete acts of alleged discrimination: (1) he was denied transfer out of his field position repeatedly throughout 2011, 2012, 2013, and 2014; (2) he had difficulty in achieving a promotion in 2012;[7] (3) he experienced a lengthy process in obtaining his vacation pay in 2013; (4) he overheard

---

[7] Ogu acknowledges that he was promoted under the "fixed step" program in 2012. [Doc. No. 1] at 6-7; [Doc. 36-1] at 307:6-7; [Doc. No. 36-2] at 2-3. Ogu asserts no facts in support of a claim for failure to promote subsequent to March 5, 2014. If, arguendo, Ogu were the victim of a promotion policy that had a negative disparate impact on black individuals, it was prior to March 5, 2014, and, thus, is untimely.

someone repeating an alleged comment from a manager that "she cannot afford to get Mr. Ogu on board in drilling because he is not a U.S. citizen" sometime between November 2013 and January 2014; (5) he was the subject of an investigation for payroll fraud in January 2014; (6) he received an incorrect pay rate throughout 2014;[8] and, (7) he was improperly discharged in November 2014. [Doc. No. 1] at 2-3, 3-4, and 4-5; [Doc. 36-1] at 137:4-21; 181:2-21.

In *Morgan*, the Tenth Circuit held that "a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period… set forth in 42 U.S.C. § 2000e–5(e)(1)". *Morgan*, 536 U.S. at 122. Ogu filed his charge with the EEOC on December 30, 2014. [Doc. No. 36-1], Ex. 3. Therefore, STC's Motion for Summary Judgement as to claims related to alleged discriminatory conduct occurring prior to March 5, 2014, is granted. The Court finds that the only acts of alleged discrimination not time-barred are: (1) denial of transfer after March 5, 2014; (2) improper day rate after March 5, 2014; and, (3) improper discharge.

## II. Title VII Prima Facie Case

Ogu bears the initial burden of establishing a prima facie case of both disparate impact based on race and disparate treatment based on national origin. *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1193 (10th Cir. 2006); *Sulich v. Sysco Intermountain Food Servs.*,

---

[8] Incorrect pay has been recognized as a discrete act in that "'[e]ach week's paycheck that deliver[ed] less to a black than to a similarly situated white is a wrong actionable under Title VII.'" *Morgan*, 536 U.S. at 112 (quoting *Brazemore v. Friday*, 478 U.S. 385, 106 S.Ct. 3000 (1986)); *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1186 (10th Cir. 2003).

*Inc.*, 242 Fed. Appx. 532, 534 (10th Cir. 2007); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973), holding modified by *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993).  Only if Ogu can establish a prima facie case, will the Court apply the burden shifting framework of *McDonell Douglas*.  *Id*.; *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1220–21 (10th Circuit 2013).

### A.  Race Discrimination – Disparate impact

A disparate impact claim challenges an employment practice that is "fair in form, but discriminatory in operation." *Carpenter*, 456 F.3d at 1187 (quoting *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1312 (10th Cir.1999) (internal quotations omitted).  Under Title VII, 42 U.S.C. § 2000e–2(k)(1)(A)(i), "[a]n unlawful employment practice based on disparate impact is established . . . only if . . . a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of . . . race . . .."

In order to survive a motion for summary judgment on a claim for disparate impact, Ogu must "first make out a prima facie case of discrimination by showing that a specific identifiable employment practice or policy caused a significant disparate impact on a protected group." *Carpenter*, 456 F.3d at 1193 (quoting *Murphy v. Derwinski,* 990 F.2d 540, 544 (10th Cir.1993)); *see Tabor*, 703 F.3d at 1221.  A party asserting a claim for disparate impact is:

required to show that he personally has been the victim of discrimination by the general practice which allegedly resulted in a discriminatory impact on a protected group. It is not sufficient for an individual plaintiff to show that the employer followed a discriminatory policy without also showing that plaintiff himself was injured.

*Coe v. Yellow Freight Sys., Inc.*, 646 F.2d 444, 451 (10th Cir. 1981).

If Ogu presents a prima facie case of disparate impact, the burden will shift to STC "to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity." 42 U.S.C. § 2000e–2(k)(1)(A)(i); *Tabor*, 703 F.3d at 1220–21. Even if STC can meet this burden Ogu may still prevail by "showing that the [defendant] refuses to adopt an available alternative employment practice that has less disparate impact and serves the employer's legitimate needs." *Tabor*, 703 F.3d at 1221 (quoting *Ricci v. DeStefano,* 557 U.S. 557, 578, 129 S.Ct. 2658, 174 L.Ed.2d 490 (2009)).

Ogu's timely disparate impact claim is based on STC's post-discharge procedures. Specifically, Ogu asserts that STC did not allow him to rescind his resignation and did not provide him with an appeal process after his resignation was accepted. [Doc. No. 1] at 14-15. Ogu further alleges that STC's post-discharge procedure negatively impacts "minority employees in general, and African American or African employees in particular." [Doc. No. 1] at 15. Ogu presents no evidence as to what, if any, dismissal and post-discharge procedures existed or any evidence as to the alleged disparate impact of those procedures on African American or African employees. STC, on the other hand, provides evidence that it "does not have any policy, procedure, or practice that gives employees a right to rescind a voluntary resignation." [Doc. No. 36-2] at 6. Ogu presents only his deposition testimony asserting his own belief that STC's Employee Handbook provides for a period

in which an employee may rescind his or her resignation. [Doc. 36-1] at 299:7-19. Ogu fails to provide the Employee Handbook or any other evidence that such a policy existed and, therefore, fails to effectively controvert STC's evidence.[9]

If Ogu had identified an existing, specific post-discharge employment practice, he would also be required to present evidence showing that this practice "caused a significant disparate impact on a protected group." *Carpenter*, 456 F.3d 1183, 1193. In determining whether such evidence is sufficiently reliable, the Court is concerned with: (1) the size of the disparity between promotions; (2) the statistical significance of the disparity; and (3) "whether the statistical evidence effectively isolates the challenged employment practice." *Tabor*, 703 F.3d at 1222. However, Ogu presents no evidence as to the disparate impact of the alleged post-discharge policy on any protected group.

The Court finds that Ogu's Response improperly "rest[s] on ignorance of facts, on speculation, or on suspicion.'" *Bird*, 832 F.3d at 1199 (quoting *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988)). Ogu had ample time to conduct discovery and has failed to present any evidence in support of a prima facie case of racial disparate impact. No genuine

---

[9] As stated above, Ogu had ample time to conduct discovery regarding STC's post-resignation employment practices. Ogu was served with STC's Fed. R. Civ. P. 26(a)(1) initial disclosures on June 9, 2017, nearly six months prior to the filing date of STC's Motion. [Doc. NO. 47-1] at 6. Those disclosures included the contact information for Uzma Babar, the declarant STC relies on in demonstrating it had no practice or procedure allowing an employee to rescind his or her resignation. *Id*. at 2.

issue of material fact can be identified regarding his disparate impact claim. No reasonable jury could find for Ogu based on such a void of evidence.[10]

Because Ogu has failed to establish a prima facie case of disparate impact as to STC's post-discharge procedures, it is unnecessary to address whether these employment practices are job related or whether STC should have adopted alternative employment practices to avoid any disparate impact. STC's Motion for Summary Judgement is granted as to Ogu's claim of racial discrimination in the form of disparate impact under Title VII.

### B. National Origin Discrimination – Disparate Treatment

Title VII prohibits national-origin discrimination which is defined as "the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group." 29 C.F.R. § 1606.1 (2017). An employee alleging "discrimination has access to two claims for relief: hostile work environment and disparate treatment." *Sidlo v. Millercoors, LLC*, 718 Fed. Appx. 718, 726 (10th Cir. 2018). Ogu's second cause of action for violation of Title VII based on national origin discrimination does not allege a hostile work environment but rather that he was "treated less favorably than similarly

---

[10] The Court notes that Ogu likewise failed to present any evidence to establish a prima facie case as to his untimely claim for racial disparate impact based on STC's promotion policy. Ogu's Response relies entirely on excerpts from his deposition admitting his lack of information as to the impact of STC's promotion policy on African American or African employees. [Doc. No. 41-6] at 300:6-12, 301:8-17, 302:2-5. At best, Ogu points to an unsubstantiated "trend right in the company" and one or two anecdotal incidences about which he can provide no details, first hand or otherwise. *Id.* at 302:25-303:6, 300:12-19, 302:5-12. This claim, too, rests on speculation and suspicion insufficient to meet his prima facie burden.

situated employees" because of his national origin. [Doc. No. 1] at 16. Therefore, Ogu's second cause of action is one for disparate treatment based on his national origin.

To prevail on a disparate treatment claim under Title VII, a plaintiff must show that his employer intentionally discriminated against him for a reason prohibited by the statute. *Jaramillo v. Colorado Judicial Dep't*, 427 F.3d 1303, 1306 (10th Cir. 2005), *as modified on denial of reh'g* (Dec. 20, 2005). In order to establish a prima facie case of national origin discrimination under § 1981 and/or Title VII, Ogu must demonstrate: "(1) that he is a member of a [protected class], (2) that he suffered an adverse employment action, and (3) that similarly situated employees were treated differently." *Trujillo v. Univ. of Colorado Health Scis. Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998); *see also, Sidlo*, 718 Fed. Appx. at 727 (citing *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007)).

If Ogu establishes a prima facie case, the burden will shift to STC "to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Jaramillo*, 427 F.3d at 1307 (citing *Tex. Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). If STC meets this burden, the burden returns to Ogu to "prove by a preponderance of the evidence that the employer's reasons are a pretext for unlawful discrimination." *Id.* (citing *Rivera v. City & County of Denver,* 365 F.3d 912, 920 (10th Cir.2004)).

The burden of establishing a prima facie case of disparate treatment is not onerous. *Texas Dep't of Cmty. Affairs,* 450 U.S. at 253. However, "a common element critical to all prima facie cases is that the plaintiff must demonstrate that 'the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination.'"

15

*Bird*, 832 F.3d at 1200 (quoting *Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005) (internal quotations omitted)).

STC does not challenge Ogu's Nigerian origin, therefore, Ogu has presented sufficient evidence to demonstrate that he is a member of a protected class. STC asserts, however, that Ogu has not suffered an adverse employment action and that similarly situated employees were not treated differently than Ogu. [Doc. No. 36] at 14; [Doc. No. 36-2] at 4.

An "adverse employment action" under Title VII "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257, 2268, 141 L. Ed. 2d 633 (1998). "The Tenth Circuit liberally defines the phrase 'adverse employment action.'" *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998). However, the Tenth Circuit does not consider "'a mere inconvenience or an alteration of job responsibilities' to be an adverse employment action" *Id*. (quoting *Crady v. Liberty Nat'l Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993)).

Ogu's alleged adverse employment actions include: (1) failure to grant him a transfer to a position out of the field or provide him a more fixed schedule; (2) receiving the improper day rate for his position; and, (3) failure to allow him to rescind his resignation. [Doc. No. 1] at 7, 9, 11 and 13. While the burden is *de minimus* to demonstrate an adverse employment action was motivated by intentional discrimination, Ogu has failed to identify any evidence to clear that low bar.

In fact, Ogu provides abundant evidence that his desire for a transfer to an office job or a position with a predictable schedule was motivated entirely by personal rather than professional reasons and points to no evidence that the denial of a transfer was based on his national origin. Specifically, Ogu sought transfer due to his wife's severe mental health issues and the serious implications those issues imposed on the well-being of his children. While these reasons for desiring a transfer are understandable, Ogu presents no evidence that the denial of a transfer adversely altered his existing employment status or benefits. In fact, Ogu testified he was willing to accept a transfer to "a lower position" to accommodate his personal situation. [Doc. No. 36-1] at 137:10-12. Ogu admits that he was promoted in 2012 and offers no evidence that a transfer would amount to a further promotion.

Likewise, Ogu fails to present any evidence regarding the other alleged adverse employment actions. Although Ogu maintains that he received an incorrect, reduced day rate for his rank and position, he presents no evidence to support what he believes to be the correct day rate. STC, however, presents evidence that Ogu received the correct day rate. [Doc. No. 36-2], Ex. 2 at 7. Ogu offers no evidence that STC had a policy in place granting a resigning employee a period of time to rescind that resignation, and admits that he was an at-will employee who could be fired at any time for any reason so long as it was not illegal. [Doc. No. 1] at 13; [Doc. No. 36-1] at 71:14-18.

Nor does Ogu present any evidence demonstrating the requisite inference that his national origin was a motivating factor for any of these alleged adverse employment actions. Ogu's Response refers to various comments allegedly made by his supervisors

and STC Human Resources personnel about his national origin and visa status but fails to cite to the record in support of such comments. Ogu does not provide any evidence as to when the comments were made, who made them, or the circumstances under which he became aware of them. Finally, Ogu fails to establish any connection between these alleged comments and the alleged adverse employment actions. [11]

Having presented no evidence in his favor, the Court concludes that no reasonable jury could find discrimination based on national origin. Therefore, Ogu has failed to establish a prima facie case of disparate treatment. STC's motion for summary judgment is granted as to Ogu's claim under Title VII for discrimination based on his national origin.

## III.    Intentional Infliction of Emotional Distress

STC moves for summary judgment on Ogu's third cause of action for the common law tort of intentional infliction of emotional distress. In order to prevail on a claim for intentional infliction of emotional distress, Ogu must prove:

> (1) the tortfeasor acted intentionally or recklessly; (2) the tortfeasor's conduct was extreme and outrageous; (3) the plaintiff actually experienced emotional distress; and (4) the emotional distress was severe.

---

[11] In his Complaint, Ogu recites overhearing a conversation in which an individual referred to a manager's alleged comment that "she cannot afford to get Mr. Ogu on board in Drilling Engineering because he is not a U.S. citizen." [Doc. No. 1] at 11. If Ogu is relying on this comment in support of his national origin disparate treatment claim, it is both untimely under Title VII, having allegedly occurred prior to March 5, 2014, and inadmissible hearsay. Fed. R. Evid. 801(c) and 802. In *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1555 (10th Cir. 1995), the Tenth Circuit held that "Rule 56 precludes the use of inadmissible hearsay testimony in depositions submitted in support of, or in opposition to, summary judgment." In addition, Ogu fails to establish any connection between that alleged comment and any of the asserted adverse employment actions. *See Sidlo*, 718 Fed. Appx. at 727 (finding charging employee failed to establish prima facie case in that he pointed only to one comment by supervisor to show discrimination but did not show any connection between that comment to any of the alleged adverse employment actions).

*Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1558 (10th Cir. 1995) (citing *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1387 (10th Cir.1991); *see Computer Publications, Inc. v. Welton*, 2002 OK 50, ¶ 7, 49 P.3d 732, 735. "Liability for this tort does not extend to 'mere insults, indignities, threats, or occasional acts that are definitely inconsiderate and unkind.'" *Starr*, 54 F.3d at 1558 (quoting *Eddy v. Brown,* 715 P.2d 74, 77 (Okla.1986) (internal quotations and paraphrasing omitted)). The tortfeasor's conduct must go "beyond all possible bounds of decency" or be "utterly intolerable in a civilized community." *Id.* (quoting *Eddy*, 715 P.2d at 77). However, the conduct must be considered "in the setting in which it occurred." *Eddy v. Brown*, 715 P.2d 74, 77 (Okla. 1986); *Young v. City of Idabel*, 721 Fed. Appx. 789, 805 (10th Cir. 2018) (citing *Eddy*, 715 P.2d at 77).

The Tenth Circuit has noted that "[t]his is a high bar to clear" and "for an IIED claim to succeed, 'the distress must be of such a character that no reasonable person could be expected to endure it.'" *Young*, 721 Fed. Appx. at 805 (quoting *Daemi*, 931 F.2d at 1389) (internal quotations omitted). To meet this high bar, "[n]othing short of '*[e]xtraordinary* transgressions of the bounds of civility' will give rise to liability for intentional infliction of emotional distress." *Starr*, 54 F.3d at 1558 (quoting *Merrick v. Northern Natural Gas Co.,* 911 F.2d 426, 432 (10th Cir.1990) (emphasis in original).

Ogu bases his IIED claim on the alleged discriminatory acts described above and STC's failure to transfer him or provide him leave despite knowing of his wife's mental health issues. [Doc. No. 1] at 17-18; [Doc. No. 41] at 23-24. As discussed above, Ogu presents no evidence of the alleged discriminatory acts upon which he bases his IIED claim.

Nor does conduct actionable under Title VII necessarily rise to the level of outrageousness required for intentional infliction of emotional distress. *See Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 687, 688 (10th Cir. 2007) (finding that the alleged specific incidents of racial harassment including refusal to shake hands, direction to serve customers of the same race, sending racially charged gifts, etc., "amounts to no more than the 'insults, indignities, . . . annoyances, petty oppressions and trivialities' that are insufficient to support a claim for the intentional infliction of emotional distress") (internal quotations and paraphrasing omitted).

As with his Title VII claims, Ogu presents no evidence in support of his claim of intentional infliction of emotional distress. To the contrary, Ogu's own sworn testimony demonstrates that, when requested, STC provided him with leave to care for his wife's mental health issues. [Doc. No. 36-1] at 182:10-21. Ogu also presents evidence that he complained of discriminatory comments only "a couple of times" over the course of his nearly four-year employment. [Doc. No. 41-6] at 368:16-19.

Even if Ogu had presented specific, admissible evidence of the conduct at issue, the Court finds the conduct - accepting Ogu's characterization - amounts to nothing more than occasional acts of indignity that are not so atrocious and utterly intolerable as to "progress beyond all possible bounds of decency." *Starr*, 54 F.3d at 1558. Accordingly, the conduct complained of by Ogu does not rise to the level necessary to permit recovery under the tort of intentional infliction of emotional distress. STC's Motion for Summary Judgement as to Ogu's cause of action for intentional infliction of emotional distress is granted.

## IV.    Plaintiff's Cross-Motion for Summary Judgment

Ogu includes a cross-motion for summary judgement regarding his Title VII claims for racial disparate impact discrimination and national origin discrimination in his Response to Defendant's Motion for Summary Judgement.   Ogu's only argument in support of his motion is that "no reasonable jury could possibly find that Defendant had a legitimate business purpose in firing an efficient employee in the circumstances of this case."  [Doc. No. 41] at 22.  However, as stated above, Ogu has failed to establish a prima facie case for his Title VII claims as required to shift the burden to STC to present evidence of a legitimate business purpose.

Plaintiff's cross-motion for summary judgment is denied.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants Pathfinder and Schlumberger's Motion for Summary Judgment [Doc. No. 36] is **GRANTED**, and Plaintiff's Cross-Motion for Summary Judgment is **DENIED**, as set forth herein.  Judgment will be entered in favor of Defendants.

**IT IS SO ORDERED** this 26th day of November, 2018.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE